IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | § § § | |
| Plaintiff, | § § | |
| v. | § § | Civil Action No. 3:10-CV-1178-M |
| JOHN W. PETROS, | § § § | |
| Defendant. | § | |

### FINDINGS, CONCLUSIONS AND RECOMMENDATION

Pursuant to the *Standing Order of Reference*, filed May 24, 2011, this case was referred for pretrial management, including the determination of non-dispositive motions and issuance of findings of fact and recommendations on dispositive motions. Before the Court are *Plaintiff's Motion for Summary Judgment*, filed April 12, 2012 (doc. 178), and the defendant's *Motion To Dismiss for Lack of Prosecution*, filed January 28, 2013 (doc. 194). Based on the relevant filings and applicable law, the plaintiff's motion should be **GRANTED,** and the defendant's motion should be **DENIED.**

### I. BACKGROUND

**A.    Factual Background**

John W. Petros (Petros) was the sole officer, director, and shareholder of Tsukuda-America, Inc. (Tsukuda), at the time it was formed. (doc. 180-8 at 5-6.)[1] On February 13, 2009, Petros submitted to Plaintiff Securities Exchange Commission (SEC) a notarized "Form ID Application Acknowledgment" to complete processing of his Form ID for authorization to submit filings for Tsukuda to the SEC electronically through its EDGAR system; the form identified him as the contact for Tsukuda. (doc. 180-7 at 32-33.) On March 2, 2009, Petros electronically signed a Form S-1

---

[1]    Citations refer to the cm/ecf system page number at the top of each page rather than the page numbers at the bottom of each filing.

registration statement and an amended S-1 registration statement for Tsukuda. (docs. 180-1 at 44; 180-2 at 48.) He electronically filed registration statements with the SEC on March 27, 2009, and April 12, 2009, respectively, using its EDGAR system. (docs. 180-1 at 1; 180-2 at 1.)

Tsukuda's registration statements represented that it sought to raise $600,000 through the offer and sale of three million shares of common stock at a price of $0.20 per share in order to conduct geologic explorations of a New Mexico mining site. (docs. 180-1 at 5-14; 180-2 at 5-9, 17.) The registration statements included financial statements purportedly audited by Weinberg & Company, P.A., an accounting firm in Boca Raton, Florida, as well as two other documents purportedly prepared by it. (docs. 180-1 at 15, 26, 33-37, 57; 180-2 at 16, 28, 37-40, 62.) Tsukuda's registration statement contained a purported legal opinion from the law firm of Cassidy & Associates at 9465 Counselors Row, Suite 200, Indianapolis, Indiana. (docs. 180-1 at 2, 15, 56-57; 180-2 at 2, 16, 61-62.) It also incorporated a purported geological report and consent authored by a consulting geologist, Charlotte Anderson, of San Jacinto, California. (doc. 180-1 at 15-18, 26, 58; 180-2 at 16-19, 29, 63.) Tsukuda's registration statement identified "[t]he company's stock transfer agent [as] Signature Stock Transfer." (docs. 180-1 at 25; 180-2 at 28.) The registration statement was declared effective on April 14, 2009. (doc. 180-3 at 1).

The accounting firm did not audit Tsukuda's financial statements or prepare the Report of Independent Registered Public Accounting Firm or the Consent of Independent Certified Public Accountants, and it has never done any work for Tsukuda or Petros. (doc. 180-3 at 2-3). The line items on the financial statements submitted for Tsukuda, including total assets, current liabilities, and cash flows from operating activities, are identical to those listed in registration/offering statements filed with the SEC for three other companies that Petros controls. (docs. 180-3 at 6-51; 180-4 at 1-48;

180-5 at 1-46; 180-6 at 1-52.) The attorney who purportedly signed the legal opinion did not author the opinion. (doc. 180-3 at 4.) The geologist that purportedly prepared the geological report and consent has a telephone number and email address that is tied to Petros, the physical address listed for her place of business is the home of "Rosa's Juice Bar", and the SEC has been unable to locate her or verify that she actually existed. (docs. 180-7 at 1-2, 4, 25-30.) Tsukuda's purported stock transfer agent was not, and has never been, a stock transfer agent for Tsukuda. (doc. 180-3 at 5.)

**B.**   **Procedural History**

On January 26, 2010, the SEC filed a complaint against Tsukuda and Petros alleging that they violated Section 17(a) of the Securities Act of 1933 [15 U.S.C. § 77q(a)] (Securities Act) by filing false and misleading registration and offering statements. *See SEC v. Tsukada-America, Inc. and John W. Petros*, No. 3:10-cv-136-M (N.D. Tex.). Petros filed an answer on behalf of Tsukuda and himself that asserted counterclaims and crossclaims against the SEC and several of its employees for allegedly abusing the power granted by the Securities Act and the Securities Exchange Act of 1934 (Securities Exchange Act). (*See* No. 3:10-cv-136-M, doc. 7.) He also asserted crossclaims against various third parties to which he attributed responsibility for the SEC's allegations against him. (*See id.*) The Court granted the SEC's motion to strike the counterclaims and crossclaims on grounds that Section 21(g) of the Securities Exchange Act "functions as an absolute bar against counterclaims and crossclaims in SEC enforcement proceedings" in cases where the SEC does not consent to the inclusion of a defendant's claims. (*Id.,* doc. 18 at 2.) After Tsukuda failed to appear through a licensed attorney as ordered, the Court entered a default judgment against it on June 11, 2010. (*Id.,* doc. 42). It also severed the case against Petros, which was opened as this action. (*Id.; see also* doc.1, this case.) On April 20, 2011, the SEC filed an amended complaint in this case alleging that Petros violated Section

17(a) of the Securities Act by filing a registration statement on March 27, 2009, that contained false and misleading statements and forged and fictitious documents. It seeks injunctive relief and a civil penalty against Petros. (doc. 14 at 1-2).

On April 12, 2012, the SEC moved for summary judgment on its claim that Petros committed securities fraud. (doc. 178). Petros filed a response to the motion for summary judgment on May 18, 2012 (doc. 190). The SEC filed a reply brief on May 23, 2012 (doc. 192). On January 28, 2013, Petros filed a motion to dismiss the case for lack of prosecution. (doc. 194). The SEC filed a response on February 7, 2013 (doc. 196), and Petros filed a reply brief on February 12, 2013 (doc. 197).

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when the pleadings and evidence on file show that no genuine issue exists as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "[T]he substantive law will identify which facts are material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id*. The movant makes a showing that there is no genuine issue of material fact by informing the court of the basis of its motion and by identifying the portions of the record which reveal there are no genuine material fact issues. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In a case in which "the movant bears the burden of proof on an issue, either because he is the plaintiff or as a defendant he is asserting an affirmative defense, he must establish beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986) (emphasis in original).

Once the movant makes this showing, the non-movant must then direct the court's attention

to evidence in the record sufficient to establish that there is a genuine issue of material fact for trial. *Celotex*, 477 U.S. at 324. To carry this burden, the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The non-movant must show that the evidence is sufficient to support a resolution of the factual issue in her favor. *Anderson*, 477 U.S. at 249.

While all of the evidence must be viewed in a light most favorable to the motion's opponent, *Anderson*, 477 U.S. at 255 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)), neither conclusory allegations nor unsubstantiated assertions satisfy the non-movant's summary judgment burden, *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc); *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992). "The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his or her claim." *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). "The parties may satisfy their respective burdens by 'citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials.'" *Rooters v. State Farm Lloyds*, 428 F. App'x 441, 445 (5th Cir. 2011) (per curiam) (citing Fed. R. Civ. P. 56(c)(1)).[2]

### III. ANALYSIS

**A. <u>Violation of Section 17(a)</u>**

The SEC moves for summary judgment on its claim that Petros violated Section 17(a)(1) of the Securities Act by preparing and submitting a false and misleading registration statement with the

---

[2] Courts generally liberally construe *pro se* pleadings. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) (per curiam). They have no obligation under Fed. R. Civ. P. 56 "to sift through the record in search of evidence to support a party's opposition to summary judgment", however. *Adams v. Travelers Indem. Co.*, 465 F.3d 156, 164 (5th Cir. 2006) (quoting *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998)).

SEC. (doc. 178).

>Section 17(a) of the Securities Act states, in relevant part, that:
>
>It shall be unlawful for any person in the offer or sale of any securities...by the use of any means or instruments of transportation or communication in interstate commerce or by use of the mails, directly or indirectly
>
>>(1) to employ any device, scheme, or artifice to defraud, or
>>
>>(2) to obtain money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or
>>
>>(3) to engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser.

15 U.S.C. § 77q(a). In order to establish primary liability under 17(a)(1), the SEC must prove that Petros acted with *scienter* in employing a device or scheme to defraud in the offer or sale of securities. *Aaron v. SEC*, 446 U.S. 680, 701 (1980). *Scienter* is "the mental state embracing intent to deceive, manipulate or defraud." *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193 (1976). This requirement may also be satisfied by proof that Petros acted with severe recklessness. *See Broad v. Rockwell Int'l Corp.*, 642 F.2d 929, 961 (5th Cir. 1981) (en banc). Severe recklessness is defined as highly unreasonable omissions or misrepresentations that constitute an extreme departure from the standards of ordinary care, where these omissions or misrepresentations present a danger of misleading buyers or sellers that the defendant either knows exists or is so obvious a danger that he must have been aware of it. *Id.* at 961-62; *Meadows v. SEC*, 119 F.3d 1219, 1226 (5th Cir. 1997), *citing Broad*.

The SEC has identified the portions of the record demonstrating that: 1) Petros, the sole director and officer of Tsukuda, sought and received permission to file documents electronically on its behalf with the SEC; 2) Petros subsequently signed registration documents containing false

information and statements and forged documents; and 3) these registration documents were then electronically filed with the SEC as part of an offer of securities. This evidence is sufficient to establish that at the very least, Petros acted with severe recklessness by using highly unreasonable misrepresentations that presented a danger of misleading potential buyers *and* that the danger of misleading buyers by using false statements and misrepresentations in support of his registrations statements was so obvious that Petros must have been aware of it. The SEC has therefore met its summary judgment to establish beyond peradventure *all* of the essential elements of its claim that Petros acted with *scienter*, in an offer of a security, to employ any device, scheme, or artifice to defraud. *See Fontenot v. Upjohn Co.*, 780 F.2d at 1194.

The burden shifts to Petros to identify evidence in the record that is sufficient to establish that there is a genuine issue of material fact. Petros first argues that it is unclear whether the SEC is suing him or Tsukuda in this case. (doc. 190 at 3). The SEC has obtained a default judgment against Tsukuda, and its claims against Petros as an individual were severed and now serve as the basis for this case. Petros next asserts that he cannot be held personally responsible under the Securities Act for actions he took as a director and officer for Tsukuda. *Id*. at 4. He cites to no authority for this argument. Section 17(a) states that "[i]t shall be unlawful for *any person* in the offer or sale of any securities" to defraud. (emphasis added). An officer or director who signs filings containing false statements is liable for the misstatements. *In re Enron*, 258 F.Supp.2d 576, 587-88 (S.D. Tex. Mar. 12, 2003).

Finally, Petros finally generally denies that he violated Section 17(a), (*see* doc. 190 at 4), but he points to no evidence in the record to support a finding of a genuine issue of material fact. Petros testified in his deposition that Tsukuda removed him from its Board of Directors at some point, and

7

that he did not know specifically who removed him from the board. (doc. 180-8 at 6-7, 15-16, 18.) He also testified that he did not personally electronically file the Tsukuda's registration statements, and that Tsukuda filed them, but he could not name the person who actually filed the documents. (*Id.* at 10-11.) Petros did not dispute the SEC's evidence that he was the sole officer, director, and shareholder of Tsukuda. (*Id.* at 5-6, 9.) For this reason, his testimony that Tsukuda filed the fraudulent registration statements, and that some unnamed person removed him from its board is not specific evidence sufficient to support a resolution of any factual issue in his favor. While all of the evidence must be viewed in a light most favorable to Petros when evaluating the SEC's motion, *Anderson*, 477 U.S. at 255, his conclusory denial of liability does not satisfy his burden to identify specific evidence in the record that creates a fact issue as to whether he violated Section 17(a) of the Securities Act.

The SEC's motion for summary judgment should therefore be granted.

**B. Remedies**

The SEC seeks a permanent injunction enjoining Petros from future violations of Section 17(a) of the Securities Act and have him permanently barred from: (1) acting as an officer or director of a public company under Sections 12 or 15(d) of the Exchange Act [15 U.S.C. §§ 78l and 78o(d)] and Section 20(e) of the Securities Act [15 U.S.C. § 77t(e)]; (2) participating in an offering of penny stock, pursuant to Section 20(g) of the Securities Act [15 U.S.C. § 77t(g) and Section 21(d)(6) of the Exchange Act [15 U.S.C. § 78u(d)(6)]; and (3) directly or directly, filing or causing the filing of any registration or offering statements with the Commission, pursuant to Section 21(d)(5) of the Exchange Act [15 U.S.C. § 78u(d)(5)]. The SEC also seeks to have a third-tier civil penalty imposed against Petros under Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)] and Section 21(d) of the

Exchange Act [15 U.S.C. § 78u(d)]. (doc. 179 at 13-20).

### 1. Permanent Injunction

In determining whether a defendant should be permanently enjoined for violations of the Securities Act, courts should consider: 1) the egregiousness of the defendant's conduct; 2) the isolated or recurrent nature of the violation; 3) the degree of *scienter*; 4) the sincerity of the defendant's recognition of his transgression; and 5) the likelihood of the defendant's job providing opportunities for future violations. *SEC v. Gann*, 565 F.3d 932, 940 (5th Cir. 2009).

In this case, the SEC has presented undisputed evidence that Petros is the sole officer, director, and shareholder of Tsukuda, he filed a registration containing false statements and fictitious and forged documents on behalf of Tsukuda, and the false financial statements he filed for Tsukuda were identical to those he filed for three other companies that he controls. Petros' actions qualify as egregious, and his role as the sole officer, director and shareholder of Tsukuda demonstrates that he acted with a high degree of *scienter*. Petros has failed to acknowledge any wrongdoing, and the SEC has presented evidence that he filed fraudulent registration statements for his other three companies. If a permanent injunction is not imposed, Petros could in the future form a new corporation and file false documents with the SEC on behalf of that corporation. Therefore, a permanent injunction is warranted.

### 2. Bars

The SEC also seeks to have Petros banned from: (1) acting as a director or officer of any public company because he is unfit to serve in those capacities; (2) participating in any offering of penny stock; and (3) directly or directly, filing or causing the filing of any registration or offering statements with the Commission.

When determining "unfitness" and penny stock and registration bars, courts consider: 1) the egregiousness of the underlying violation; 2) the defendant's prior offenses; 3) the defendant's role when he engaged in the violations; 4) the degree of *scienter*; 5) the defendant's economic stake in the violation; and 6) the likelihood that the misconduct will occur again. *SEC v. Patel*, 61 F.3d 137, 141 (2d Cir. 1995); *Steadman v. SEC*, 603 F.2d 1126, 1140 (5th Cir. 1979).

As noted above, Petros' violation was egregious, and he acted with a high degree of *scienter*. The SEC has provided evidence that Petros committed prior violations of the Securities Act by submitting false financial statements with registration statements for three other companies that he controls. As the sole director and officer of Tsukuda, Petros had a central and primary role in engaging in the violations of the Securities Act. While Petros did not succeed in raising any funds for Tsukuda, his intent was to raise $600,000 based on false information. Furthermore, if Petros is not barred from acting as a director or officer of a public company, participating in an offering of penny stock, or filing registration or offering statements with the SEC, the evidence of his prior behavior shows a high likelihood that misconduct will re-occur. These bars should therefore be imposed.

**3. Civil Penalty**

Finally, the SEC seeks imposition of a third-tier civil penalty in an amount to be determined by the Court.

Under the Securities Act and the Exchange Act, a third-tier penalty is appropriate if the violation involved "fraud, deceit, manipulation, or deliberate or reckless disregard of a regulatory requirement" and "such violation directly or indirectly resulted in substantial losses or created a significant risk of substantial losses to other persons." 15 U.S.C. § 78u(d)(3)(B)(iii); *see also SEC v. United Energy Partners, Inc.,* 88 Fed. App'x 744, 747 (5th Cir. Feb. 18, 2004). Section 20(d) of the

Securities Act allows imposition of a penalty of up to $130,000 per securities violation for a natural person, or the gross amount of pecuniary gain from the violation. 15 U.S.C. 77t(d), 17 C.F.R. § 201.1002 (2005). In determining whether such a penalty should be imposed, and the amount of the penalty, courts should examine a number of factors similar to those examined when considering an injunction or officer and director bar, including: 1) the egregiousness of the defendant's conduct; 2) the degree of scienter; 3) whether the conduct created substantial losses or the risk of substantial losses to other persons; 4) whether the conduct was isolated or recurrent; 5) the cooperation of the defendant with law enforcement authorities; 6) whether the penalty should be reduced due to a defendant's demonstrated current and future financial condition; and 7) the adequacy of other criminal or civil sanctions to punish the defendant. *SEC v. Amerifirst Funding, Inc.*, 2008 WL 1959843, *7 (N.D. Tex. May 5, 2008), *citing SEC v. Opulentica*, 479 F.Supp.2d 319, 331 (S.D.N.Y. 2007); *SEC v. Lewis*, 492 F.Supp.2d 1173, 1174 (D.S.D. 2007); *SEC v. Church Extension of the Church of God, Inc.*, 429 F.Supp.2d 1045, 1050-51 (S.D.Ind. 2005).

Again, Petros' conduct was egregious, he acted with a high degree of scienter, his conduct created the risk of loss to other persons in the amount of $600,000 based on his fraudulent scheme although no loss occurred, and his conduct was recurrent. Petros has not cooperated with law enforcement. The availability of other sanctions, even though recommended, are not adequate given his course of conduct. Petros has not been indicted in a criminal case, and there is no indication whether that will happen. In addition, Petros has provided no evidence of his inability to pay a penalty, or that a reduction in the maximum amount is warranted, although the Court notes that he has proceeded *pro se* in this case. The Court may impose a civil penalty even assuming that Petros is unable to pay it. *S.E.C. v. Allen,* 2012 WL 5986443, *2-3 (N.D. Tex. Nov. 28, 2012); *SEC v. Harris*,

11

2012 WL 759885, *5 (N.D. Tex. Mar. 7, 2012), *citing SEC v. Warren*, 574 F.3d 1368, 1370 (11th Cir. 2008). The majority of factors weigh in favor of imposing a substantial civil penalty in this case.

Nevertheless, while a third-tier civil penalty is appropriate, the maximum penalty of $130,000 is not warranted in this case where there were no losses despite Petros' egregious conduct. *See S.E.C. v. Offill*, 2012 WL 1138622 (N.D. Tex. Apr. 5, 2012) (imposing second-tier penalty of $120,000 against former SEC attorney for violations that clearly involved a deliberate disregard of regulatory requirements). Therefore, the Court should assess a penalty of $ 25,000 against Petros for his violation of the Securities Act. This amount is sufficient to punish Petros for his conduct and to deter future violations. *See Amerifirst Funding, Inc.*, 2008 WL 1959843 at *7; *compare S.E.C. v. Converge Global, Inc.*, 2006 WL 907567, *6 (S.D. Fla. March 10, 2006) (finding that third-tier civil penalty was warranted but declining to impose maximum penalty and finding that $25,000 was adequate given lack of loss to investors, no profit by defendant, and defendant's insolvency).

## IV. CONCLUSION

The SEC's motion for summary judgment should be **GRANTED,** and Petros' motion to dismiss should be **DENIED**.[3] The Court should order that:

1. Petros and his agents, servants, employees, attorneys, and all persons in active concert or participation with them who receive actual notice of this the judgment by personal service or otherwise is permanently restrained and enjoined from violating Section 17(a) of the Securities Act of 1933 (the "Securities Act") [15 U.S.C. § 77q(a)] in the offer or sale of any security by the use of any means or instruments of transportation or communication in interstate commerce or by use of the mails, directly or indirectly:

    (a) to employ any device, scheme, or artifice to defraud;
    (b) to obtain money or property by means of any untrue statement of a material

---

[3] Petros moves to dismiss this under Rule 41(b) of the Federal Rules of Civil Procedure for failure of the SEC to prosecute a case against him individually. (doc. 195). Rule 41(b) permit courts to dismiss a case for failure to prosecute or comply with court orders. Petros' disagreement with the legal basis for SEC's case against him does not demonstrate a failure to prosecute or follow court orders on the part of the SEC. His motion should therefore be denied.

fact or any omission of a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

(c) to engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser.

2. Pursuant to Section 20(e) of the Securities Act [15 U.S.C. § 77t(e)], Petros is prohibited from acting as an officer or director of any issuer that has a class of securities registered pursuant to Section 12 of the Exchange Act [15 U.S.C. § 78l] or that is required to file reports pursuant to Section 15(d) of the Exchange Act [15 U.S.C. § 78o(d)].

3. Petros is permanently barred from participating in an offering of penny stock, including engaging in activities with a broker, dealer, or issuer for purposes of issuing, trading, or inducing or attempting to induce the purchase or sale of any penny stock. A penny stock is any equity security that has a price of less than five dollars, except as provided in Rule 3a51-1 under the Exchange Act [17 C.F.R. 240.3a51-1].

4. Pursuant to Section 21(d)(5) of the Exchange Act [15 U.S.C. § 78u(d)(5)], Petros is permanently barred from, directly or indirectly, filing or causing the filing of any registration or offering statements with the Commission.

5. Petros shall pay a civil penalty in the amount of $ 25,000 to the Securities and Exchange Commission under Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)] and Section 21(d) of the Exchange Act [15 U.S.C. § 78u(d)]. Petros shall make this payment within 14 days after entry of Final Judgment. Petros may transmit payment electronically to the Commission, which will provide detailed ACH transfer/Fedwire instructions upon request. Payment may also be made directly from a bank account via Pay.gov through the SEC website at http://www.sec.gov/about/offices/ofm.htm. Petros may also pay by certified check, bank cashier's check, or United States postal money order payable to the Securities and Exchange Commission, which shall be delivered or mailed to

   Enterprise Services Center
   Accounts Receivable Branch
   6500 South MacArthur Boulevard
   Oklahoma City, OK 73169

   and shall be accompanied by a letter identifying the case title, civil action number, and name of this Court; John W. Petros as a defendant in this action; and specifying that payment is made pursuant to this Final Judgment. Petros shall simultaneously transmit photocopies of evidence of payment and case identifying information to the Commission's counsel in this action. By making this payment, Petros relinquishes all legal and equitable right, title, and interest in such funds and no part of the funds shall be returned to Petros. The Commission shall send the funds paid pursuant to this Final Judgment to the United States Treasury. Petros shall pay post-judgment interest on any delinquent amounts pursuant to 28 USC § 1961.

6. This Court shall retain jurisdiction of this matter for the purposes of enforcing the terms of the Final Judgment.

**SO RECOMMENDED on this 1st day of March, 2013.**

_____
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND
NOTICE OF RIGHT TO APPEAL/OBJECT**

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a cop. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

_____
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE